In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1588

ROBERT B. CIARPAGLINI,

*Plaintiff-Appellant,*

*v.*

FELICIA NORWOOD, in her official capacity as Director of Illinois Department of Healthcare and Family Services, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 13 C 50213 — **Philip G. Reinhard**, *Judge.*

MARCH 25, 2016

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Robert B. Ciarpaglini, an Illinois Medicaid participant, challenges Illinois legislation that caps at four the number of prescriptions a Medicaid recipient can receive without prior approval within a thirty-day period. See 305 Ill. Comp. Stat. 5/5-5.12(j). At the time he filed suit, he was subject to that legislation and alleged he was

struggling to obtain his medications because of it. While his suit was pending, though, he was moved to a managed care program. As a result he is no longer subject to that cap.

The main dispute before us, though not the only one, is whether the transfer to managed care rendered moot Ciarpaglini's claims for declaratory and injunctive relief. The district court held that it did. *Ciarpaglini v. Quinn*, No. 13 C 50213, 2014 WL 1018146 (N.D. Ill. Mar. 17, 2014). Although Ciarpaglini offered evidence that the switch might not be permanent, the court held his arguments were "simply speculation," "no more than a guess," and insufficient to create a "reasonable expectation" that the four-prescription limit would apply to him in the future. *Id.* at *3.

We hold that there is insufficient evidence in the record to determine whether Ciarpaglini's claims for injunctive relief are moot, a conclusion we explain further below. We remand this matter to the district court for limited fact-finding proceedings aimed at permitting both sides to develop a record on the question of mootness. We retain jurisdiction of this matter pending completion of those proceedings.[1]

I.  *Factual and Procedural Background*

The central claim in this appeal is plaintiff's challenge under federal law to what he calls the "four-prescription limitation" in Illinois's Medicaid program. The Medicaid program covers prescription medicines. As a cost-control measure, Illinois enacted legislation in 2012 requiring prior approval for

---

[1] The district court dismissed various other claims for damages on grounds of immunity and failure to state a claim on which relief could be granted. We will resolve the appeal of those claims once the proceedings on remand are complete.

reimbursement for more than four prescriptions for one patient within a thirty-day period. 305 Ill. Comp. Stat. 5/5-5.12(j). We refer to this provision as the prior-approval requirement.

We accept plaintiff Robert Ciarpaglini's well-pled allegations as true for purposes of this appeal. See *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007), quoting *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). Because courts may properly look beyond the jurisdictional allegations of a complaint and view evidence to determine whether subject matter jurisdiction exists in fact, *id.*, we also consider Ciarpaglini's declaration, the truth of which defendants have not challenged at this stage of the case.

Plaintiff Ciarpaglini is an Illinois Medicaid recipient. He suffers from several chronic conditions, including bipolar disorder, attention deficit hyperactivity disorder, panic disorder, and generalized anxiety disorder. Doctors have prescribed at least seven medications to manage these conditions. Ciarpaglini alleges that after the prior-approval requirement took effect, he could not, at least at times, obtain the medications he needed. (He acknowledges the prior-approval mechanism but calls the system "fraught with flaws" and says it does not guarantee he will be able to get his medications.) He alleges that as a result he has contemplated committing suicide, committing petty crimes so that he would be jailed, or checking himself into hospitals just to get the medications he needed.

After informal complaints to state officials failed to produce action, Ciarpaglini filed this pro se lawsuit in June 2013. He challenges the prior-approval requirement as a violation of federal Medicaid law, the Americans with Disabilities Act, the Rehabilitation Act, and the Constitution.

A few months later, sometime in September or October 2013, Illinois moved Ciarpaglini from the general fee-for-service Medicaid program to a new managed care program. The prior-approval requirement for prescription medications does not apply to Ciarpaglini under the managed care program. That change led the defendants to move to dismiss his central claim as moot. As part of its broader final judgment, the district court agreed, and plaintiff has appealed. After reviewing the briefs submitted in the pro se appeal, we appointed counsel to represent plaintiff and ordered supplemental briefing. The law firm of Jenner & Block has ably represented him and assisted the court in this appeal.

II.  *Analysis of Justiciability Issues*

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Campbell-Ewald Co. v. Gomez*, 577 U.S. —, 136 S. Ct. 663, 669 (2016). This requires an actual controversy at "all stages of review, not merely at the time the complaint is filed." *Id.*, quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997); see also *Milwaukee Police Ass'n v. Board of Fire & Police Comm'rs*, 708 F.3d 921, 929 (7th Cir. 2013). The issue here is whether the defendants' switch of plaintiff from the fee-for-service program to the managed care program has rendered moot his challenge to the prior-approval requirement.

Relevant to this issue, plaintiff submitted a declaration in opposition to defendants' motion to dismiss saying that when he moved to the managed care program, he asked a defendant state official whether the relief from the prior-approval requirement was permanent. He was told no, that he could be subjected to the requirement again if he moved to another county without the managed-care program or if the state's

"fiscal issues" did not improve. Plaintiff also asserted that when he received this news, he "wanted to move out of Winnebago County and into Stephenson County," where he would again be subject to the prior-approval requirement.

Plaintiff offers three theories for finding his challenge is not moot and is otherwise justiciable: the so-called voluntary cessation exception to mootness; the mootness exception for wrongs capable of repetition that would otherwise evade review; and a pre-enforcement challenge to the requirement in the county where he wants to move.

A. *Voluntary Cessation*

Courts are understandably skeptical when a defendant seeks dismissal of an injunctive claim as moot on the ground that it has changed its practice while reserving the right to go back to its old ways after the lawsuit is dismissed. E.g., *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). Accordingly, "the mere cessation of the conduct sought to be enjoined does not moot a suit to enjoin the conduct, lest dismissal of the suit leave the defendant free to resume the conduct the next day." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 947 (7th Cir. 2006) (citations omitted).

Decisions by the Supreme Court and this court make clear that a defendant seeking dismissal based on its voluntary change of practice or policy must clear a high bar. "A case might become moot if subsequent events made it absolutely

clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). The "heavy burden" of persuading the court that the challenged conduct "cannot reasonably be expected to start up again" lies with the party asserting mootness. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), quoting *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203.

We applied this rule in *Milwaukee Police Association v. Jones*, 192 F.3d 742 (7th Cir. 1999). Police officers and their union challenged a new policy prohibiting police officers from discussing complaints against other police officers with anyone, including the police union. The city argued that the case was moot because a later memorandum from the assistant police chief announced the temporary rescission of the challenged policy. We held the case was not moot. The city's temporary rescission order had merely complied with a temporary restraining order. The city's order was explicitly temporary, and the city had not conceded that the challenged policy was unconstitutional. *Id*. at 746–47, citing *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). If the case were to have been dismissed as moot, there was certainly a reasonable prospect that the challenged policy would be reinstated.

At oral argument in this case, defendants asserted that their move of plaintiff from the fee-for-service program to the managed care program was part of a much broader policy shift in the Illinois Medicaid program. The state of Illinois did not roll out managed care for all Medicaid recipients in Winnebago County in order to undermine Ciarpaglini's lawsuit,

they argue, nor does the state have any intention of returning to the fee-for-service model when the lawsuit ends.

Publicly available information lends support to this view. An Illinois law, effective as of January 25, 2011, mandated that 50 percent of recipients eligible for benefits in medical assistance programs be covered in a managed care program by January 1, 2015. 215 Ill. Comp. Stat. 106/23. A state website has identified five "mandatory managed care regions" in Illinois Medicaid. See http://www.illinois.gov/hfs/SiteCollectionDocuments/CareCoorPlan.pdf (last visited March 25, 2016). One of those is the Rockford Region, which includes Winnebago County. See http://www.illinois.gov/hfs/SiteCollectionDocuments/CCExpansionMap.pdf (last visited March 25, 2016).

If the change in plaintiff's care program was indeed part of this broad shift in policy that affected all or most Medicaid recipients in Winnebago County, rather than an individually targeted effort to neutralize his lawsuit, then his challenge to the prior-approval requirement is probably moot. Statewide or even countywide changes in Medicaid policy are not made quickly or lightly. As a practical matter, the prospect that Illinois will implement further change relevant to this lawsuit— for example, by abandoning the managed care program entirely, or by making the prior-approval requirement for medications applicable to it—seems unlikely. And any such change would take time, providing advance notice to Medicaid recipients like plaintiff. Under these circumstances, the theoretical possibility that the state might someday abandon its managed care program (despite legislation mandating its expansion), or might add the prior-approval requirement to plaintiff's managed care program, would not be enough to avoid mootness.

We recognize that government policies and practices change. That will always be true. But a defendant may show a case is moot by demonstrating there is "no *reasonable* expectation that the wrong will be repeated." *Milwaukee Police Ass'n*, 192 F.3d at 747, quoting *DiGiore v. Ryan*, 172 F.3d 454, 466 (7th Cir. 1999) (emphasis added). If the move to managed care was part of a broad state initiative making Winnebago County a mandatory managed care region for all Medicaid participants, the chance that a relevant policy change will again subject Ciarpaglini to the prior-approval requirement is no more than speculative. Said another way, if Illinois is in the midst of a statewide shift toward managed care, and Ciarpaglini's move out of fee-for-service was part of that shift, defendants may be able to carry their heavy burden of showing there is no reasonable expectation he will again be subjected to the prior-approval requirement.

The problem in this appeal is that the record does not allow us to determine fairly whether plaintiff's move from fee-for-service to managed care was in fact part of a broader policy change affecting all Medicaid recipients in Winnebago County. Plaintiff has not had a fair opportunity to address information on the state defendants' website. Cf. *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015) (all opinions on appellate court's use of independent factual research), rehearing en banc denied by equally divided court, No. 14-3316 (Dec. 7, 2015). And the record does not actually show whether all or most Medicaid recipients in Winnebago County are covered by Illinois's managed care program.

Accordingly, we think the best course here is to remand this case for limited fact-finding by the district court on the

circumstances of Ciarpaglini's transfer from the fee-for-service program, where he was subject to the prior-approval requirement, to the managed care program now in effect in Winnebago County. See *Barnhart v. United States*, 884 F.2d 295, 296 (7th Cir. 1989) (in resolving motion to dismiss for lack of subject matter jurisdiction, "an evidentiary hearing may be held if necessary"). We hope the district court will be able to act promptly, while giving the parties a fair opportunity to present facts relevant to this narrow issue of mootness. We will retain jurisdiction of this appeal and will return to it after the district court has found the relevant facts.

B.  *Capable of Repetition Yet Evading Review*

For completeness, we also address plaintiff's other theories for avoiding mootness. One is that the alleged wrongdoing is capable of repetition but will evade judicial review if we do not consider it now. "The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 462 (2007), quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998); see also *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *Stotts v. Community Unit Sch. Dist. No. 1*, 230 F.3d 989, 991 (7th Cir. 2000).

The capable-of-repetition exception does not apply here. This controversy is not one of those inherently transitory situations, such as a pregnancy or an election campaign, that will run its course faster than courts can usually act to provide complete review on the merits. See *Wisconsin Right to Life*, 551 U.S. at 462–63; *Roe v. Wade*, 410 U.S. 113, 125 (1973); *Majors v. Abell*, 317 F.3d 719, 722–23 (7th Cir. 2003). The ordinary course

of injunction litigation should suffice to address the merits of a challenge to any possible repetition of the alleged problems for plaintiff Ciarpaglini or any other Medicaid recipients who encounter similar problems.

This case is similar in one respect to *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). The plaintiffs in *Olmstead* were persons with mental disabilities. They asserted that the Americans with Disabilities Act required that they be placed in community care rather than in larger, more isolated institutions. While the lawsuit was pending, the individual plaintiffs were transferred to community-based care, one before the district court ruled in plaintiffs' favor, and the other afterward. *L.C. ex rel. Zimring v. Olmstead*, 138 F.3d 893, 895 n.2 (11th Cir. 1998).

The Supreme Court noted that this change did not render the case moot in view of the plaintiffs' histories of "multiple institutional placements." *Olmstead*, 527 U.S. at 594 n.6. There was no indication in *Olmstead* that the plaintiffs' transfers were anything other than individualized decisions that could have been reversed at any time. See *id*. at 593 (transfers based on treatment teams' assessments). The Court wrote in terms of the mootness exception for wrongs capable of repetition yet evading review and agreed that the possibility of recurrence was high enough to decide the merits. See *id*. at 594 n.6, citing *L.C. ex rel. Zimring v. Olmstead*, 138 F.3d at 895 n.2; see also *Honig v. Doe*, 484 U.S. 305, 318–23 (1988) (potential for unilateral decision by defendant to change one plaintiff's school assignment again prevented dispute over special educational services from being moot).

While these decisions suggest there is not a razor-sharp doctrinal boundary between the "voluntary cessation" and

"capable of repetition" exceptions to mootness, we expect that the district court's findings on the voluntary cessation exception will govern the result under either exception. In *Olmstead*, the public officials were making patient-specific treatment decisions, and the plaintiffs' community placements had previously proven unstable. There were real prospects that the plaintiffs would again face the treatments they were challenging in court—particularly given the number of times they had been institutionalized in the past.

Whether Ciarpaglini's move into managed care was a decision made on an individual basis, or whether it was part of a statewide policy shift, is an inquiry along the same lines. It is essentially the same question that controls the voluntary cessation exception. Thus, to the extent that *Olmstead* leaves room for defendants' conduct here to be considered capable of repetition but evading review, the outcome under that test is unlikely to diverge from the voluntary cessation analysis.

C. *Pre-enforcement Challenge*

Plaintiff also argues that his interest in moving from Winnebago County to an adjacent county where he would again be subject to the prior-approval requirement is sufficient to allow him to challenge the policy that would apply to him in that county. Plaintiff has framed this argument in terms of a pre-enforcement challenge to the law that would apply to him if he moved. See generally *Susan B. Anthony List v. Driehaus*, 573 U.S. —, 134 S. Ct. 2334 (2014) (reversing dismissal of challenge to criminal law governing false statements made in political campaigns).

The factual record on this point is minimal. Plaintiff's declaration says in relevant part:

7. Sometime in late September or early October, 2013, defendants Hamos, Arndt and Parker placed me in a managed care program and at the time I received that notification I wanted to move out of Winnebago County and into Stephenson County.

8. Because of the defendants['] threat of re-imposing the four prescription limitation upon me should I leave Winnebago County and because I cannot afford to pay for all my medications I have remained in Winnebago County.

At our request, the parties briefed whether such a desire to move to another county (or state) is sufficient to give a plaintiff standing on the theory that the allegedly illegal condition of a government benefit program like Medicaid discourages the plaintiff from moving his residence. On the one hand, plaintiff contends he has a constitutional right to move and to live where he wishes. On the other hand, this theory of standing poses obvious risks of lawsuits by interlopers with little real stake in a dispute, without involving other potential plaintiffs who reside in the affected jurisdiction and may have much greater stakes in the matter. On this issue, also, we would benefit from additional fact-finding on the circumstances, reasons for, obstacles to, and sincerity of plaintiff's stated desire to move to Stephenson County.

\*   \*   \*

For these reasons, we order a limited remand of this matter to the district court for what we hope will be prompt and

limited proceedings to determine facts relevant to: (1) the voluntary cessation exception to mootness, and (2) plaintiff's stated desire to move to another county, where he would again be subject to the prior-approval requirement for more than four prescription drugs within a month. We retain jurisdiction pending that limited remand.