In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1402

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Plaintiff-Appellant*,

*v.*

FLAMBEAU, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:14-cv-00638-bbc — **Barbara B. Crabb**, *Judge*.

ARGUED SEPTEMBER 15, 2016 — DECIDED JANUARY 25, 2017

Before FLAUM, MANION, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. On the merits, this Americans with Disabilities Act case would turn on the interplay between the ADA's prohibition on involuntary medical examinations and its insurance safe-harbor provision. See 42 U.S.C. §§ 12112(d)(4) and 12201(c). Defendant Flambeau, Inc. adopted an employee wellness program. It required its employees, as a condition of receiving employer-subsidized

health insurance, to fill out a medical questionnaire and to un-
dergo biometric testing. One employee did not meet those re-
quirements in time for the 2012 benefit year. As a result, he
and his family were briefly without health insurance. He filed
a complaint with the Equal Employment Opportunity Com-
mission, and the EEOC then filed this suit against Flambeau.
The EEOC contends that Flambeau's requirement violated the
ADA's ban on involuntary medical examinations in 42 U.S.C.
§ 12112(d)(4). On cross-motions for summary judgment, the
district court granted Flambeau's motion and dismissed the
case. The EEOC has appealed.

On the merits, the parties have taken ambitious positions
on appeal. Flambeau argues that wellness programs are
largely exempt from the limits on medical examinations be-
cause the ADA does not "restrict … [an] organization … ad-
ministering the terms of a bona fide benefit plan that are
based on underwriting risks, classifying risks, or administer-
ing such risks that are based on or not inconsistent with State
law." 42 U.S.C. § 12201(c)(2). The EEOC replies that this insur-
ance safe harbor simply does not apply to wellness programs
so that the prohibition on involuntary medical examinations
applies. Both sides also offer narrower grounds for deciding
the case.

We conclude that the statutory debate should not be re-
solved in this appeal. The relief the EEOC seeks is either una-
vailable or moot. The employee resigned several years ago,
before suit was filed. He did not incur damages as a result of
Flambeau's policy, and he is not entitled to punitive damages.
In addition, Flambeau abandoned its wellness program re-
quirements for reasons unrelated to this litigation. Because
the undisputed facts show that the EEOC is not entitled to any

relief, we affirm the district court's judgment dismissing the case but without reaching the merits of the parties' statutory debate.

I. *Factual and Procedural Background*

In general, employer wellness programs use a set of benefits, incentives, and/or penalties to improve employee health and lower health insurance costs. For example, a wellness program might include discounted gym memberships, higher insurance premiums for smokers, and monetary rewards for weight loss. Flambeau offered such a wellness program to its employees.

That program included a health risk assessment in which employees answered questions about their medical histories. They also were measured for health indicators such as weight, cholesterol levels, and blood pressure. Each employee received his or her individual test results. Flambeau received aggregated and anonymous results. In 2012 and 2013, Flambeau pushed employees to participate in the wellness program by requiring participation as a condition of the employer's contributions to an employee's health insurance premiums.

Dale Arnold, a Flambeau employee, was unable to complete the assessment and testing before the 2012 benefit year deadline. Flambeau terminated his insurance coverage but gave him the option of buying continuing coverage under COBRA. Mr. Arnold did not take that option, so his health insurance lapsed.

Mr. Arnold then filed complaints with the Department of Labor and the Equal Employment Opportunity Commission alleging violations of the Family Medical Leave Act and the

Americans with Disabilities Act. After discussions with the Department of Labor, Flambeau agreed to reinstate Mr. Arnold's health insurance retroactively so long as he completed the testing and paid his own share of the premiums. Mr. Arnold did so, and Flambeau restored his insurance.

Before the 2014 benefit year began, Flambeau's management ended the mandatory testing program, finding that it was not cost-effective. Mr. Arnold resigned his job at Flambeau in March 2014. Six months later, in September 2014, the EEOC filed this suit against Flambeau alleging that its mandatory assessment and testing violated the ADA prohibition on involuntary medical examinations in 42 U.S.C. § 12112(d)(4).

Flambeau moved for summary judgment. It argued that its wellness plan was covered by the ADA's insurance safe harbor, a provision of the Act that limits the interpretation of (among other provisions) the ban on involuntary medical examinations. See 42 U.S.C. § 12201(c). The safe harbor says that ADA provisions, including Subchapter I, which contains the ban on involuntary medical examinations, "shall not be construed to prohibit or restrict … [an] organization … from … administering the terms of a bona fide benefit plan … ." 42 U.S.C. § 12201(c)(2) & (c)(3). The safe harbor also provides that it "shall not be used as a subterfuge to evade the purposes" of the ADA provisions on employment and public accommodations and services. § 12201(c). Flambeau argued in the alternative that the health testing and assessments were voluntary because they were not conditions of employment. The EEOC filed a cross-motion for partial summary judgment as to liability, arguing that the insurance safe harbor did not apply to save the Flambeau program.

The district court granted Flambeau's motion and denied the EEOC's. *EEOC v. Flambeau, Inc.*, 131 F. Supp. 3d 849, 857 (W.D. Wis. 2015). It decided that the safe harbor could cover at least some wellness programs and that this was one such program. *Id.* at 855–56.

The parties' briefing on appeal addressed the statutory issue whether the insurance safe harbor should be interpreted to apply to wellness programs generally and to Flambeau's in particular. After oral argument, we ordered supplemental briefing on whether the case is moot. Having received and considered that briefing, we conclude that the EEOC's claim for injunctive relief is moot and that undisputed facts foreclose its claims for compensatory and punitive damages on behalf of Mr. Arnold.

II. *Analysis*

Article III of the Constitution limits federal courts' jurisdiction, our power to speak the law, to "cases" and "controversies." *Campbell-Ewald Co. v. Gomez*, 577 U.S. —,—, 136 S. Ct. 663, 669 (2016). A "live controversy" must exist at "all stages of review." *Brown v. Bartholomew Consolidated School Corp.*, 442 F.3d 588, 596 (7th Cir. 2006). Federal courts therefore lack jurisdiction over moot cases, cases in which "one of the parties lacks a personal stake" in the suit's outcome. *Banks v. National Collegiate Athletic Ass'n*, 977 F.2d 1081, 1085 (7th Cir. 1992). The EEOC offers two theories for holding that this case is not moot. First, it argues that Mr. Arnold has a personal stake in the suit's outcome because he is entitled to compensatory and punitive damages. Second, the EEOC argues that it can seek injunctive relief because the "voluntary cessation" exception to mootness applies in this case.

We disagree with the EEOC's "voluntary cessation" analysis, finding that the exception does not apply and that its claim for injunctive relief is moot. There is a live controversy between the parties over Mr. Arnold's entitlement to compensatory and punitive damages. The undisputed facts, including information provided to us in response to our question about available relief, show however that Mr. Arnold cannot recover either compensatory or punitive damages. There would be no point in a remand for further exploration of those issues or other aspects of the case.

### A. *Mr. Arnold's Personal Stake*

The EEOC offers three grounds for awarding monetary damages to Mr. Arnold at an eventual trial: he is entitled to recover $82.02 in out-of-pocket medical expenses that Flambeau should have paid; he is entitled to emotional distress damages; and he is entitled to punitive damages. Mr. Arnold could not recover any of these damages.

#### 1. *Out-of-Pocket Expenses*

Mr. Arnold claims a right to reimbursement for $82.02 of medical expenses incurred while he did not have insurance coverage. But Mr. Arnold also frankly admits never paying that money: those bills were either written off or paid by third parties. He has no right to be repaid.

#### 2. *Emotional Distress Damages*

When the only evidence of emotional distress comes from the injured party's testimony, "he must reasonably and sufficiently explain the circumstances of his injury and not resort to mere conclusory statements." *Biggs v. Village of Dupo*, 892 F.2d 1298, 1304 (7th Cir. 1990). In this case, the only evidence of Mr. Arnold's emotional distress is his deposition testimony.

When asked to explain his emotional pain, Mr. Arnold repeated the events of his case: "when they took my insurance away, and my kids didn't know what's going on, and I couldn't go to the doctor and stuff like that." We "appreciate that it can be hard to articulate emotional upset." *Biggs*, 892 F.2d at 1304. Mr. Arnold need not show that he took medication, underwent therapy, or sought any medical attention. Still, his testimony does not even reach the level of conclusory statements of emotional distress and is insufficient to show he could be entitled to such damages. Cf. *Catalan v. GMAC Mortgage Corp.*, 629 F.3d 676, 696 (7th Cir. 2011) (reversing summary judgment where plaintiffs "described their emotional turmoil in reasonable detail").

### 3. *Punitive Damages*

Punitive damages are available for violations of the Americans with Disabilities Act if the defendant discriminated "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). The EEOC argues that it can show that Flambeau acted with reckless indifference to Mr. Arnold's federally protected rights against involuntary physical examinations.

"The terms 'malice' and 'reckless'" focus on the employer's "state of mind." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999). But even "intentional discrimination does not give rise to punitive damages" where the "underlying theory of discrimination" is "novel or otherwise poorly recognized." *Id.* at 536–37. That description fits this case. The EEOC's theory of discrimination assumes that the ADA's insurance safe harbor does not cover at least some wellness plans. Whether that is true, and for what kinds of wellness

plans it might be true, were open questions at relevant times in 2012 and 2013. They remain open even today.

The statute's plain text does not resolve either question. The parties and their amici have shown as much in their excellent briefs on this appeal. When Flambeau acted to terminate Mr. Arnold's health insurance, the EEOC had not yet proposed the relevant regulations. See *Regulations Under the Americans with Disabilities Act*, 81 Fed. Reg. 31126-01, 31128 (May 17, 2016) (EEOC published relevant notice of proposed rulemaking in 2015 for rule that became 29 C.F.R. § 1630.14(d)). The only case law was adverse to the EEOC's position. See *Seff v. Broward County*, 691 F.3d 1221, 1224 (11th Cir. 2012) (affirming district court's finding that safe harbor covered county's wellness plan). Even today, and even counting this lawsuit, cases raising those questions can be counted on one hand. See *EEOC v. Honeywell International, Inc.*, No. 14-4517 ADM/TNL, 2014 WL 5795481, at *5 (D. Minn. Nov. 6, 2014) (denying EEOC's motion for preliminary injunction, and noting "great uncertainty" surrounding wellness plans); *EEOC v. Orion Energy Systems, Inc.*, — F. Supp. 3d. —, No. 14-CV-1019, 2016 WL 5107019, at *6–7 (E.D. Wis. Sept. 19, 2016) (finding that safe harbor does not apply to wellness programs).

That legal uncertainty at the relevant time distinguishes this case from cases approving punitive damages for well-understood violations of the ADA and other antidiscrimination laws. See *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1296 (7th Cir. 1987) ("The complete rule … may be that intentional, illegal conduct may support an award of punitive damages when the application of the law to the facts at hand was so clear at the time of the act that reasonably competent

people would have agreed on its application."); compare *EEOC v. Autozone, Inc.*, 707 F.3d 824, 835–36 (7th Cir. 2013) (approving punitive damages award in ADA case where defendant's disability coordinator "was dismissive" of plaintiff's repeated accommodation requests); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 662–63 (7th Cir. 2001) (affirming punitive damages where supervisors knew harasser's jokes and touching were "inappropriate" and "incorrect"); *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 859–60 (7th Cir. 2001) (reversing judgment as a matter of law denying punitive damages because supervisors who demoted plaintiff after he reported harassment were familiar with Title VII and their employer's anti-discrimination policy), with *EEOC v. Boh Brothers Construction Co.*, 731 F.3d 444, 468 (5th Cir. 2013) (en banc) (defendant entitled to judgment as a matter of law overturning punitive damages because court "had not directly addressed whether a plaintiff could rely on evidence of gender-stereotyping in a same-sex discrimination case").

The unsettled legal landscape also makes it unsurprising that when Flambeau consulted its attorneys about the benefit plan's compliance with state and federal law, they did not raise this problem. Flambeau's director of human resources, Mark Rieland, also consulted an attorney in January 2012 after Mr. Arnold filed a grievance with his union about his loss of insurance coverage. Rieland sent Flambeau's attorney an article outlining the EEOC's position on wellness programs: if employees were required to participate, the program was not voluntary. The attorney advised Rieland to "continue to deny the grievance." Rieland's repeated consultations with an attorney regarding Mr. Arnold's federally protected rights are inconsistent with reckless indifference to those rights, absent

some reason to doubt he provided the attorney with all relevant information. See *Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 102 (2d Cir. 2001) ("[A]ction taken pursuant to advice that the action is consistent with the law is insufficient to support an award of punitive damages under the standard articulated in *Kolstad*.").

The EEOC emphasizes a later part of Rieland's 2012 consultation with the attorney. After the attorney advised Rieland to continue denying the grievance, Rieland mentioned that the grievance indicated Mr. Arnold had contacted "Employee Benefits, [U.S.] Department of Labor." His attorney explained that the grievance probably referred to the Employee Benefits Security Administration, which was "not likely" to tell Mr. Arnold that Flambeau was wrong. Mr. Arnold would, he added, "have gotten a different reaction if he had contacted the EEOC."

The EEOC sees in that exchange a reckless indifference to its position, which was best expressed at that time in its enforcement guidance, which said: "A wellness program is 'voluntary' as long as an employer neither requires participation nor penalizes employees who do not participate." *Enforcement Guidance: Disability-Related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (ADA)*, Equal Employment Opportunity Comm'n, (July 27, 2000), https://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited Jan. 19, 2017).

We recognize that that was the EEOC's position and that the EEOC's guidelines are an important "body of experience and informed judgment" entitled to some deference. They are not, however, controlling law. *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 693 n.7 (7th Cir. 1998), quoting *Smith v.*

*Midland Brake, Inc.*, 138 F.3d 1304, 1308 n.2 (10th Cir. 1998). An employer's or its attorney's disagreement with EEOC guidance does not by itself support a punitive damages award, at least where the guidance addresses an area of law as unsettled as this one.

B. *Injunctive Relief and Voluntary Cessation*

Even if Mr. Arnold has no monetary stake in the controversy's outcome, the EEOC argues that it can seek injunctive relief. But that claim for relief is moot: Flambeau halted its mandatory wellness program, so there is nothing to enjoin.

The EEOC argues that the controversy survived the employer's voluntary cessation of the challenged practice. "[A]s a general rule, 'voluntary cessation of allegedly illegal conduct does not … make the case moot.'" *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979), quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). That general rule does not apply when both: (1) there is no reasonable expectation that the alleged violation will reoccur; and (2) interim events "irrevocably eradicated" the alleged violation's effects. *Id.* We explained above how the effects of Flambeau's policy have been eradicated or never existed. There is also no reasonable expectation now that Flambeau will reinstitute its mandatory wellness program. See *EEOC v. North Gibson School Corp.*, 266 F.3d 607, 621 (7th Cir. 2001) (affirming mootness determination where "EEOC has not identified a currently discriminatory plan nor … has a reasonable expectation that a discriminatory plan will be adopted"), abrogated in part on other grounds by *EEOC v. Waffle House*, 534 U.S. 279 (2002).

The voluntary cessation exception to mootness is important. "Otherwise, a defendant could engage in unlawful

conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. —, —, 133 S. Ct. 721, 727 (2013); *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006) (voluntary cessation doctrine "aims to eliminate the incentive for a defendant to strategically alter its conduct in order to prevent or undo a ruling adverse to its interest"). This record does "allow us to determine fairly" the reasons for Flambeau's change in policy. Cf. *Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016) (remanding for limited fact-finding on mootness where record did not allow appellate court to determine whether defendant's change in conduct was a "broader policy change").

Manipulation is not a concern here. Flambeau made its wellness program non-mandatory well before this lawsuit began, and it did so for reasons unrelated to the lawsuit. That is important evidence that the conduct is unlikely to reoccur. See *Aref v. Lynch*, 833 F.3d 242, 251 n.6 (D.C. Cir. 2016) ("A defendant who ceased the challenged conduct for reasons unrelated to the litigation may have an easier time showing the challenged conduct is unlikely to reoccur.").

The evidence of Flambeau's reasoning also supports that determination. It stopped requiring the biometric testing and the assessment because their costs outweighed their benefits. That was true in part because Flambeau found that its employees were not using the test results to change their behavior. We should not expect human nature to change too rapidly. Cf. *Ciarpaglini*, 817 F.3d at 546 (change in government policy appeared to render case moot, despite theoretical possibility that it "might someday" change back); *Adams v. Bowater Inc.*, 313 F.3d 611, 615 (1st Cir. 2002) (case not moot because new

case law might "easily" make resuming challenged conduct "in defendants' interest").

The reasons for Flambeau's change were not speculation or opinion and were not based on the lawsuit. The policy was not changed quickly or lightly. Flambeau required the testing for two years. It knew, based on that experience, the program's costs and benefits. A decision supported by less evidence or less thought might more reasonably be expected to recur. Cf. *Rich v. Secretary, Florida Dep't of Corrections*, 716 F.3d 525, 532 (11th Cir. 2013) (voluntary resumption of kosher prison meal program did not moot case when defendant could "simply end" program as it had in the past).

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260 (9th Cir. 1998), involved such a decision. The defendants in that case argued that the plaintiffs' request for an injunction against its mandatory employee medical screenings was moot because they had ceased those screenings after deciding they were not cost-effective. *Id.* at 1274. But they did not explain why their views had changed, so the court determined that the case was not moot. *Id.*

The EEOC argues that Flambeau's economic reasons cannot support a finding of mootness. It cites *Norman-Bloodsaw* and *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199 (1968), to argue that no decision based on cost-effectiveness can support a mootness determination. Like *Norman-Bloodsaw*, *Concentrated Phosphate* is distinguishable. In *Concentrated Phosphate*, the Supreme Court said that defendants' "own statement that it would be uneconomical for them" to continue their conduct, "standing alone, cannot suffice" to show mootness. 393 U.S. at 203. Flambeau's statement does not stand alone. Flambeau's conduct supports its claim: it

ended the mandatory testing program before the EEOC even filed suit. Moreover, in *Concentrated Phosphate* there was evidence that defendants' economic claims were false. *Id*. at 202–03 (explaining how the regulatory change that allegedly rendered plaintiffs' claims moot did not apply to all defendants or all relevant conduct). No such evidence exists here.

The core requirement of the case-or-controversy standard is that the parties "have a personal stake in the outcome of the lawsuit throughout its duration." *Wisconsin Right to Life Political Action Committee v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011). They do not in this case. But we add this: at least in close cases, mootness can be in part a prudential doctrine. *Id*. ("Mootness doctrine is … premised on constitutional requirements and prudential considerations."); *Adams*, 313 F.3d at 614 (Supreme Court did not mean "woodenly to exclude … equitable or other considerations" from mootness analysis when likelihood of conduct's recurrence is "very hard to estimate").

Prudence weighs against reaching to decide the merits of this case. The questions of statutory interpretation are difficult, at least in the absence of interpretive regulations. Those questions affect the 75% of firms offering health benefits that also offer wellness programs. Kristin Madison, *Employer Wellness Incentives, the ACA, and the ADA: Reconciling Policy Objectives*, 51 Willamette L. Rev. 407, 412–13 (2015) (citing the results of a Kaiser Family Foundation survey of employers). This case also presents the statutory questions in an outdated legal landscape. The relevant EEOC regulations were issued after this case's events. See 29 C.F.R. § 1630.14 (effective July 18, 2016) (providing that medical examinations would be deemed involuntary under ADA if employee's participation

has effect of greater than 30% of total cost of "self-only" health coverage, and that insurance safe harbor does not apply to wellness programs). Most important, neither party to this case has any longer a serious stake in its outcome. The genuine statutory issues should be decided by a court in a case where the answers will matter to the parties.

The judgment of the district court dismissing the action is AFFIRMED for the reasons stated in this opinion.