In the

# United States Court of Appeals

### For the Seventh Circuit

No. 16-3599

CAROLINE GUZMAN,

*Plaintiff-Appellant,*

*v.*

BROWN COUNTY,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 15-CV-0215 — **William C. Griesbach**, *Chief Judge.*

ARGUED APRIL 21, 2017 — DECIDED MARCH 7, 2018

Before WOOD, *Chief Judge*, SYKES, *Circuit Judge*, and
COLEMAN, *District Judge*.*

COLEMAN, *District Judge*. Caroline Guzman, a former 911
dispatcher for Brown County, claims that Brown County in-
terfered with her efforts to take leave under the Family Med-
ical Leave Act, discriminated against her because she was

---

* Of the Northern District of Illinois, sitting by designation.

disabled, refused to accommodate her disability, and retaliated against her for exercising her rights under the Family Medical Leave Act and the Americans with Disabilities Act. The district court granted summary judgment in Brown County's favor. We affirm.

## I. Background

Guzman was employed as a Telecommunication Operator at the Brown County Public Safety Communications Department 911 Call Center from 2002 until 2013. The 911 Call Center is responsible for answering all emergency and most non-emergency calls for the 9 police departments, 18 fire departments, and 2 EMS agencies operating in Brown County and dispatching those calls to the appropriate entities.

The call center operates around the clock, with nine to twelve telecommunication operators assigned to each shift. Guzman previously worked on the third shift under communications supervisor Thomas Smith, but in 2012 she moved to the day shift, where she was supervised by communications supervisor David Panure. At the time of her termination in 2013, the call center was overseen by interim director of public safety Cullen Peltier. Since 2011, Brown County has had a third-party vendor manage disability, FMLA, and unpaid leave requests. Employees interested in these programs directly contact the third-party vendor, and do not need permission or approval from a supervisor.

Guzman was diagnosed with sleep apnea in February 2006, and was issued a CPAP machine to treat that condition. In 2008, Guzman had gastric bypass surgery, which resulted in substantial weight loss. Following the surgery, Guzman stopped using her CPAP machine, which she threw away in

2014. Guzman was not re-diagnosed with sleep apnea following her gastric bypass surgery and does not recall if she ever provided Brown County with documentation concerning her 2006 sleep apnea diagnosis.[1]

Public Safety Communications Center employees' conduct is governed by a policy manual, which requires that employees report to work when scheduled and be ready to relieve their counterpart at the scheduled start of their shift. Brown County employs a progressive discipline system, which escalates from verbal warnings to written warnings (also known as performance reports), suspension, and ultimately termination.

During her employment, Guzman was subject to a number of disciplinary actions. She received five verbal or written warnings concerning her use of vacation time or casual time between 2004 and 2013. She also received three verbal or written warnings for failure to timely complete mandatory proficiency tests, as well as one verbal warning for failure to report to work on a date that she mistakenly believed that she was not scheduled to work. In November 2012, Guzman was questioned by the Brown County Sheriff's Department regarding potential professional misconduct, but was cleared of the allegations following a hearing. Guzman took FMLA leaves unrelated to her sleep apnea in 2007, 2008, 2010, and 2011, and several of these disciplinary actions took place shortly after her return from those leaves.

---

[1] Although Guzman repeatedly asserted that Brown County knew about her 2006 diagnosis, the portions of the record that she relied on provide no support for that proposition.

Guzman was disciplined for being late to work in September 2011, June 2012, August 2012, and December 2012. On February 9, 2013, Guzman failed to report at the start of her shift. Her supervisor, Panure, called her repeatedly and, when the calls went unanswered, requested that the Sheriff's department dispatch a deputy to check on Guzman. The deputy made contact with Guzman, who subsequently arrived at work. On February 25, 2013, Guzman attended a meeting to address her February 9, 2013, tardiness. At that meeting, Guzman was given a three-day suspension and warned that if she was late again she could be fired. Guzman attributed her tardiness on February 9 to having slept through her alarms and made no mention of sleep apnea. Guzman's suspension was to be served on March 4, March 11, and March 12, 2013.

On March 8, 2013, Guzman was again late for work. Panure informed Peltier, who decided to terminate Guzman's employment. When she arrived at work, Guzman asked Panure if it would be helpful for her to have a doctor's note regarding her absence, and was informed that it would be. Although she might have mentioned her sleep apnea to Panure during that conversation, it is undisputed that he did not convey that information to Peltier.

That evening, Guzman called her psychiatrist, Dr. Stamm, to obtain a note excusing her tardiness. In light of Guzman's medical history, Dr. Stamm felt that it was likely that Guzman was suffering from recurrent sleep apnea, and accordingly wrote a note stating that Guzman "most probably" had sleep apnea, and that she needed to be retested and treated for that condition.

On March 15, 2013, Panure, Smith, and Peltier met with Guzman, and informed her that she was being terminated. Guzman, in turn, provided the March 8, 2013, note written by Dr. Stamm. The parties dispute whether Guzman provided the note before or after she was informed of her termination. They also dispute whether Guzman requested FMLA leave during or after that meeting. Notwithstanding Guzman's note or verbal requests, her employment was terminated on that date.

In an unrelated series of events relevant to Guzman's claims in this case, a replevin judgment was entered against Guzman in Brown County's small claims court in favor of Lebakkens Inc. on October 11, 2012. A writ of replevin was simultaneously issued, directing the Brown County Sheriff's Department to deliver furniture in Guzman's possession to Lebakkens. Guzman was served with the writ of replevin on November 14, 2012. After several months, Lebakkens filed an ex parte application for a warrant to permit the Brown County Sheriff's Department to use reasonable and necessary force to enter Guzman's residence in order to secure the return of the items, which was granted on April 4, 2013. Guzman testified that both the issuance of such a warrant and its execution by nine deputies was abnormal. She also testified that a Lebakkens employee had informed her that it had sought the warrant based upon a sheriff deputy's representation that Guzman would not voluntarily return the furniture in question.

On February 25, 2015, Guzman filed the complaint in this action, alleging Family Medical Leave Act (FMLA) interference and FMLA retaliation in violation of 29 U.S.C. § 2601 *et seq.*, disability discrimination and retaliation in violation of

the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 *et seq.*, and discrimination in violation of the Rehabilitation Act, 29 U.S.C. § 794, *et seq.* Following the close of discovery, Brown County moved for summary judgment, which the district court granted. This appeal followed.

## II. Discussion

We review the district court's grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in Guzman's favor. *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. FMLA Interference

Guzman first contends that the district court erred in granting summary judgment on her FMLA interference claim. The FMLA entitles eligible employees suffering from serious health conditions to twelve workweeks of leave during each twelve-month period. 29 U.S.C. § 2612(a)(1)(D). The FMLA also makes it unlawful for an employer to interfere with an employee's attempt to exercise FMLA rights or to retaliate against employees who exercise their FMLA rights. 29 U.S.C. § 2615. In order to prevail on a FMLA interference claim, an employee must establish that (1) she was eligible for the FMLA's protections, (2) her employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

It is undisputed that Guzman was eligible for FMLA protection and that Brown County was subject to the FMLA. Guzman contends that she was also entitled to leave under the FMLA. An employee is entitled to FMLA leave if (1) she is afflicted with a "serious health condition" and (2) that condition renders her unable to perform the functions of her job. *Id.* at 477–78. Guzman asserts, without citation to supporting legal authority, that sleep apnea is a chronic condition meeting the definition of "serious health condition" under the FMLA regulations. The FMLA defines a serious health condition as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Here, it is not altogether clear that Guzman suffered from sleep apnea in 2013. Although Guzman had been diagnosed with sleep apnea seven years prior, she had not been diagnosed since that time,[2] sought no further treatment for that condition, and had reported that she no longer suffered from the symptoms of sleep apnea. Even if Guzman did suffer from sleep apnea, moreover, she has offered no evidence that she received inpatient care for that condition or was subject to continuing treatment for that condition at

---

[2] On March 8, 2013, Guzman obtained a note from Dr. Stamm, her treating psychiatrist, reading "[t]he above patient most probably has sleep apnea. Please excuse her tardiness due to oversleeping. She needs to be re-tested and treated for that condition." Dr. Stamm's note did not diagnose Guzman with sleep apnea or state that her oversleeping was a result of sleep apnea. Instead, it indicated that her oversleeping "probably" was a result of sleep apnea—a logical suspicion based on her past diagnosis—and that she needed to be tested so that she could be diagnosed with sleep apnea and treated appropriately.

the time of her leave request. To the contrary, she concedes that she was not seeing any medical professional for her sleep apnea and had thrown away her CPAP machine. Guzman has accordingly failed to introduce any evidence capable of establishing that she suffered from a "serious health condition" under the FMLA.

Guzman also failed to identify evidence capable of establishing that she provided adequate notice of her need for FMLA leave. Typically, an employee must give notice of the need for FMLA leave at least 30 days in advance but, if the need for leave is not known in advance, an employee may give notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

> [T]he employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. [She] doesn't have to write a brief demonstrating a legal entitlement. [She] just has to give the employer enough information to establish probable cause, as it were, to believe that [she] is entitled to FMLA leave.

*Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 953 (7th Cir. 2004).

Guzman argues that she orally requested FMLA leave during her March 8 conversation with Panure. Although perhaps supported by the record, this argument was not raised by Guzman in her brief opposing summary judgment in the district court, and is therefore waived on appeal. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) (citations omitted).

Guzman also argues that Brown County had constructive notice of her need for FMLA leave. We have previously recognized that clear abnormalities in an employee's behavior can provide constructive notice to an employer of serious health conditions that require FMLA leave. *Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381–82 (7th Cir. 2003).[3] Here, Guzman contends that Brown County was on constructive notice of her medical condition because her six late arrivals between September 2011 and March 2013 were uncharacteristic with her performance history.

The cases in which we have previously found possible constructive notice of the need for FMLA leave have entailed stark behavioral changes, such as an employee who suddenly and uncharacteristically began aggressively shouting at coworkers over minor occurrences. *See, e.g., Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 726–727 (7th Cir. 2007). Six incidents of oversleeping, spread over eighteen months, do not constitute the sort of stark and abrupt change which is capable of providing constructive notice of a serious health condition. Guzman, moreover, attributed some of her late arrivals to non-medical factors such as her car not starting or using her cellphone as an alarm clock. These admissions of non-medical excuses further dispel any potential constructive notice provided by her tardiness. Guzman has therefore failed

---

[3] We acknowledge that other circuits have called the continued applicability of *Byrne* and its progeny into question in light of the 2009 amendments to 29 C.F.R. § 825.303(a). *See, e.g., Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 788 (8th Cir. 2009). That issue, however, has not been presented here, and its resolution is not necessary to the present case. We accordingly assume, without deciding, that *Byrne* continues to apply for the purposes of this appeal.

to produce evidence capable of establishing that Brown County had constructive notice of her sleep apnea.

Guzman alternatively argues that she gave Brown County actual notice of her belief that she suffered from sleep apnea on March 15, when she requested FMLA leave. Although it is disputed whether she raised this issue before or after being informed that she was being terminated, if at all, it is undisputed that the decision to terminate her was made before Peltier had any knowledge that Guzman had requested FMLA leave or believed that she had sleep apnea. Guzman therefore cannot establish that she was denied FMLA benefits to which she was entitled. *See Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 636 (7th Cir. 2009) (quoting *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.")); *see also Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012) (affirming summary judgment on the plaintiff's FMLA interference claim where the employee asked for leave after the termination decision had already been made). Accordingly, the district court did not err in granting summary judgment in Brown County's favor on Guzman's FMLA interference claim.

## B. FMLA Retaliation

Guzman contends that the district court erred by concluding that her FMLA retaliation claim could not survive summary judgment. In order to prevail on a FMLA retaliation claim, a plaintiff must present evidence that she was subject to an adverse employment action that occurred be-

cause she requested or took FMLA leave. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015). It is undisputed that Peltier decided to fire Guzman on March 8, 2013. It is also undisputed that, if Guzman informed Panure of the possibility that she suffered from sleep apnea, he did not relay that information to Peltier. Accordingly, Guzman cannot establish a causal link between requests for FMLA leave on or after March 8, 2013, and her termination.

Guzman appears to alternatively contend that she was subjected to retaliation for past FMLA leaves. Guzman took FMLA leave from October 2010 through March 2011, and on June 5, 2011, was disciplined for failure to complete required trainings. Guzman again took FMLA leave from October 14 to October 21, 2011, and on November 2, 2011, was again disciplined for failing to complete required training. Guzman also received subsequent discipline in January and June of 2012 regarding vacation issues, as well as the previously described discipline for tardiness. A sheriff's deputy was also sent to check on Guzman when she was late for work, although Guzman admits that this had happened a couple of times previously when telecommunication operators were late and did not answer the phone.

Guzman has not established that any of the discipline that she received was unwarranted, and has identified no direct evidence linking her discipline to her FMLA leaves. Unfortunately for Guzman, "mere temporal proximity" is not enough to establish a genuine issue of material fact to survive summary judgment. *Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (quoting *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)).

Guzman also argues that she was subjected to greater scrutiny and discipline than similarly situated employees who had not taken FMLA leave. In determining whether two employees are directly comparable in all material respects, we consider whether the employees held the same job description, were subject to the same standards, were subordinate to the same supervisor, and were similarly qualified. *Hull v. Stoughton Trailers, LLC*, 445 F.3d 949, 952 (7th Cir. 2006).

Guzman, in a self-drafted document, identifies twenty-seven coworkers who she contends were late to work but were not disciplined. Guzman, however, does not consistently identify when the identified employees were late or how late they were, what shift they worked at the time of the alleged infraction, who their supervisor was at the time of the alleged infraction, or what their disciplinary history was at the time of the alleged infraction. *See Atanus v. Perry,* 520 F.3d 662, 675 (7th Cir. 2008) (recognizing that employers are justified in reprimanding employees more severely for repeated errors or infractions). To the contrary, Guzman admits that some of the identified employees held different job titles or did not work the same shift as her at the time of their tardiness. Guzman also admits that she does not know whether any of the putative comparators are disabled or whether they had used FMLA leave, beyond the fact that they did not mention it in their conversations with her. Because Guzman's evidence cannot establish that her proposed comparators are similarly situated to her, she cannot establish that she was treated worse than similarly situated employees as a result of her past FMLA leaves.

Finally, Guzman appears to contend that Brown County retaliated against her by dispatching the Sheriff's Department to assist a private company in repossessing Guzman's furniture following her termination. Acts taking place *after* an employee is terminated, however, do not constitute adverse employment actions. *Reed v. Shepard*, 939 F.2d 484, 492–93 (7th Cir. 1991). Guzman, moreover, has identified no evidence capable of establishing that the execution of the judicially-issued warrant was motivated by her past FMLA requests or other protected conduct.

## C. Disability Discrimination

Guzman next contends that the district court erred in granting summary judgment on her disability discrimination claims. The ADA and Rehabilitation Act prohibit an employer from discriminating against a qualified individual with a disability. [4] 42 U.S.C. § 12112; 29 U.S.C. § 794. In order to defeat summary judgment on her disability discrimination claim, Guzman must point to evidence capable of establishing that (1) she is a person with a disability within the meaning of the ADA and Rehabilitation Act; (2) she is qualified to perform the essential functions of her job with or without a reasonable accommodation; and (3) she suffered from an ad-

---

[4] Brown County contends that Guzman abandoned or waived her Rehabilitation Act claim in the district court. The district court recognized that Guzman "did not respond to or even address Defendant's arguments for summary judgment on the issue of Guzman's Rehabilitation Act claim." The district court, however, did not hold that this claim had been waived or abandoned and instead proceeded to deny it on its merits. Because the district court ruled on the merits of this issue, we decline to hold that it has been waived on appeal.

verse employment decision as a result of her disability. *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005).

We need not decide whether Guzman is a qualified individual with a disability because, even assuming that she was, she has failed to identify any evidence establishing that an adverse employment action occurred as a result of her alleged disability. Guzman has not identified any evidence that Peltier knew that Guzman suffered from sleep apnea prior to deciding to fire her. Instead, the undisputed evidence establishes that Guzman was fired based on her repeated failures to show up to work on time, in violation of multiple provisions of the Public Safety Communications Center Policy Manual. It might well be the case that Guzman's repeated tardiness was a side effect of undiagnosed sleep apnea. But "[v]iolation of a workplace rule, even if it is caused by a disability, is no defense to discipline up to and including termination." *Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860, 863 (7th Cir. 2010) (citing *Pernice v. City of Chicago*, 237 F.3d 783, 785 (7th Cir. 2001)). Here, moreover, there can be no dispute that the rule in question was an important one and that Guzman's violations constituted a recurring pattern of conduct. Accordingly, Guzman has failed to demonstrate that her termination was a result of her disability as opposed to her repeated late arrivals.

## D. Failure to Accommodate

Guzman further contends that the district court erred in rejecting her failure to accommodate claim. In order to prevail on this claim, Guzman would need to point to evidence showing that (1) she is a qualified individual with a disability; (2) her employer was aware of this disability; and (3) her employer failed to reasonably accommodate the disability.

*E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). Generally, an employer is not obligated to accommodate an employee's disability until the employee informs the employer of the existence of the disability and requests an accommodation. *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).

Guzman contends that she requested a reasonable accommodation, or, alternatively, that Brown County was on notice of her disability. There is no evidence, however, establishing that Brown County was aware of Guzman's initial diagnosis of sleep apnea or subsequent treatment. Even Guzman's 2011 fitness-for-duty exam, which undisputedly was received by Brown County, failed to mention sleep apnea, acknowledging only that Guzman "no longer has excessive need for sleep or sleep hunger and is really feeling much more like her normal self." Such a general statement, buried in a psychiatric fitness-for-duty report, is incapable of providing notice that an employee suffers from a specific, unmentioned medical condition.

The next possible time that Guzman could have provided notice was in 2013, either during her March 8 conversation with Panure or her March 15 termination meeting. The evidence is not conclusive as to whether Brown County was informed that Guzman *had* sleep apnea on either of these dates. Even if it was, however, the conduct for which Guzman was terminated had already occurred. The undisputed evidence establishes that Guzman was terminated based on her repeated late arrivals, the last of which occurred on March 8, 2013, prior to her conversation with Panure. After the fact requests for accommodation do not excuse past misconduct. *Tate v. Ancell*, 551 F. App'x 877, 886 (7th Cir .2014).

Guzman has accordingly failed to introduce evidence establishing that Brown County failed to accommodate her alleged disability.

### E. Disability Retaliation

Finally, Guzman contends that the district court erred in granting summary judgment on her disability retaliation claim. In order to survive summary judgment on this claim, Guzman must identify evidence showing that (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011).

Guzman argues that her termination was an adverse employment action and that it occurred as a result of her request for a reasonable accommodation. As previously discussed, however, it is undisputed that Peltier was unaware of Guzman's asserted need for an accommodation when he decided to fire her. Guzman accordingly cannot establish a causal link between her request for accommodations and her subsequent termination.

Guzman additionally asserts that Brown County took an adverse employment action against her by sending the sheriff's department to repossess her furniture. As previously noted, however, actions taking place after an employee has already been terminated do not constitute adverse employment actions. *Reed*, 939 F.2d at 492–93. Guzman therefore cannot establish that Brown County retaliated against her for exercising her ADA rights.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is

AFFIRMED.