FREDERICK J. KAPALA, District Judge
Plaintiff's motion for partial summary judgment [49] is granted in part and denied in part. The court enters summary judgment for plaintiff on defendant's res judicata and undue hardship affirmative defenses. The motion for partial summary judgment is denied in all other respects. Defendants' motion for summary judgment [54] is denied. Plaintiff's motion to deem facts undisputed [81] is denied as moot. Defendants' motion to strike [87] plaintiff's response to reply filed without leave is granted.
STATEMENT
Plaintiff, Richard J. Jankowski, has sued his former employer, Dean Foods Company and Dean Dairy Holdings, LLC ("Dean") alleging discrimination and failure to accommodate in violation of the American's with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA") and retaliatory discharge in violation of the Illinois Worker's Compensation Act, 820 ILCS § 305/1 et seq., and Illinois common law. Before the court are plaintiff's motion for partial summary judgment, Dean's motion for summary judgment, and motions to strike and deem facts undisputed filed by both parties.
I. FACTS[1]
Dean operates a facility in Huntley, Illinois (the "Huntley Plant") with five production *701 departments: (1) the empty case or wire room department (the "Empty Case Room"); (2) the Uniloy or blow mold department room (the "Uniloy Room"); (3) the filler or bottling room department (the "Filler Room"); (4) the Pasteurization Room; and (5) the Cooler Room. Each department is staffed by its own operators, as well as additional general, break, and vacation relief operators. Dean hired plaintiff in 2002 as a General Dairy Operator in their Huntley Plant. Plaintiff was a member of the Dairy Employees Union/Teamsters Local 754 (the "Union") and was subject to the terms and conditions of the applicable collective bargaining agreement ("CBA") between Dean and the Union.
In August 2003, plaintiff suffered a workplace injury while "stacking skids" in the Empty Case Room. Dean accommodated plaintiff's injury, following his request, by allowing him to return to work on light duty. Plaintiff filed a workers' compensation claim against Dean relating to his August 2003 injury that was later settled. Plaintiff later returned to full duty without medical restrictions.
On May 14, 2005, plaintiff injured his neck while pushing a steel bossy cart ("bossy") loaded with eighty gallons of milk into a semi-trailer. Plaintiff went on a medical leave of absence following his injury. Plaintiff filed a workers' compensation claim against Dean relating to his May 2005 injury that was later settled. In May 2006, plaintiff returned to work without medical restrictions.
On December 6, 2007, plaintiff sent a complaint letter to Dean's corporate office alleging "harassment from the company due to [his] on the job injury in August of 2003." Following an investigation, Dean closed its inquiry after its investigator determined that plaintiff's complaint was meritless.
Plaintiff worked in the Empty Case Room without medical restrictions from May 2006 through October 5, 2009. On October 5, 2009, plaintiff re-injured his neck while pushing a fully-loaded bossy in the Cooler Room. Plaintiff completed an Employee Accident Report on October 16, 2009. On the same day, Dean managers Randy Lentz and Dave Dixon met with plaintiff regarding his injury. Lentz and Dixon asked plaintiff to submit to a physical examination performed by Dr. Wollin, an occupational physician affiliated with Dean. Following Dr. Wollin's examination, plaintiff was released to return to work subject to the following temporary medical restrictions: (1) no lifting 25 or more pounds; and (2) no pushing or pulling 50 or more pounds. On October 17, 2009, Dean accommodated plaintiff, upon his request, by returning him to work on light duty. While on light duty, plaintiff was no longer required to push or pull loaded bossies or perform any work outside the parameters of his medical restrictions. On October 19, 2009, Sherri Bryant, Dean's Injury Counselor, sent plaintiff a letter stating that: (1) she would assist him in finding work within his medical restrictions; (2) she would facilitate his return to "full duty work;" and (3) an adjuster from an insurance company would be contacting him regarding his injury and workers' compensation benefits.
On October 25, 2009, plaintiff sent a complaint letter to Dean's corporate office alleging: (1) unsafe working conditions; (2)
*702 retaliation for suffering a workplace injury; (3) "medical condition discrimination"; and (4) harassment. In response to plaintiff's complaint, Dean sent an investigator, Scott Redden, to investigate its merits. Following an investigation, Redden concluded that plaintiff's complaint was meritless. For the remainder of 2009 and through December 2010, pursuant to his request, Dean continued to accommodate plaintiff by allowing him to work full-time on light duty. Plaintiff disputes that he in fact only performed light duty during this period.
On December 23, 2010, while still working on light duty, plaintiff filed a workers' compensation claim against Dean relating to his October 2009 injury. Plaintiff continued to work until he took a medical leave in February 2011 after losing strength in his left arm. Plaintiff never returned to work for Dean. Helmsman Management Services, a third-party administrator and member of Liberty Mutual Insurance, denied plaintiff's workers' compensation claim and Dean communicated this decision to him in the fall of 2011.
In November 2012, Dean implemented its Temporary Transitional Duty Program ("TTDP") under which employees who sustained work-related injuries or illnesses may be placed into temporary assignments that accommodate their non-permanent restrictions for a period not exceeding 180 days. On January 4, 2013, the parties engaged in an arbitration regarding the denial of plaintiff's workers' compensation claim and the arbitrator issued a decision in favor of Dean on January 31, 2013. The Illinois Workers' Compensation Commission ("IWCC") affirmed the arbitrator's decision denying plaintiff any further benefits under the IWCA on July 22, 2013. On June 24, 2016, the Illinois Appellate Court affirmed the IWCC's decision.
On August 7, 2014, nearly three years and six months after he went on medical leave, plaintiff submitted a Work Duty Status Report ("WDSR") to George Spadoni, a Senior Human Resources Business Partner responsible for the Huntley Plant, and Brandon Marvin, the Huntley Environmental Health and Safety Manager at the time. The WDSR stated that plaintiff was permanently restricted from: (1) repetitive grabbing, (2) pushing and pulling greater than 50 pounds, (3) lifting more than 25 pounds from floor to waist, and (4) performing above shoulder work. The WDSR also prohibited plaintiff from: lifting 50 to 100 pounds and climbing. Plaintiff was also partially restricted from: (1) moderate lifting between 20 to 50 pounds; (2) pushing, pulling or carrying; (3) stooping; (4) kneeling; and (5) repeated bending. At the time he submitted the WDSR, plaintiff did not communicate to Dean any objection to the restrictions.
After receiving plaintiff's WDSR, Spadoni drafted department specific questionnaires that asked whether each of plaintiff's medical restrictions prevented him from performing the essential functions of an operator position in the production departments at the Huntley Plant. Spadoni sent the questionnaires to Gregory Warren, Production Manager at the Huntley Plant, who was responsible for performing the analysis of whether plaintiff could perform the essential functions of an operator in the various departments with or without accommodations. Warren has been employed by Dean for nearly 40 years in numerous positions, including Plant Manager, and has extensive knowledge of the job duties of each operator position at the Huntley Plant. Dean contends that one of the essential functions for an operator in the Empty Case Room is to be physically able to stack cases, which could be full of returned product and weigh up to 38 pounds, 6 to 7 feet high. Plaintiff disputes *703 that this is an essential function of an operator in the Empty Case Room. In particular, in his affidavit in opposition to Dean's motion for summary judgment, plaintiff swears that:
Following my October 2009 work injury to February 2011, I accomplished all essential duties in the Empty Case room within medical restrictions using various methods to lessen the weight of anything I needed to lift, and also using a forklift to perform some heavier tasks. These duties were not "light" duties. It was my regular, pre-injury job. At the same time they were not so heavy as to require me to violate my restrictions. My restrictions were made permanent in July 2010 and I continued doing my job as I had before. No one told me that my work performance was dissatisfactory, or I was too slow, created a safety hazard or lowered productivity.
....
Based on my experience working in the Empty case room, stacking full cases of returned product is not an essential function because operators are not required to do it in any certain manner or to any certain height, there are no consequences of not stacking in any certain manner or to any certain height, handling returned product is a very small part of the job (< 2-3%), and I was able to efficiently unstack and stack cases by removing/adding a bottle or 2 at a time to adjust total weight to within my lifting restriction. If Dean returned me to work, I could use a ladder to stack to above shoulder, or just keep stacks to/below my shoulder.
According to Dean, another essential function for an operator in the Empty Case Room is to be physically able to stack 48 pound empty pallets. In his affidavit, plaintiff also disputes that this is an essential function of the job:
Based on my experience working in the Empty Case room, stacking empty pallets is not an essential function because operators are not required to do it in any certain manner or to any certain height, there are no consequences of not doing it one way or to one height, handling empty pallets is a very small part of the job (< 2-3%), and I was able to efficiently stack empty pallets using a forklift or manually by flipping them on their side and interlocking to make a shorter stack, or I just leaned them against the side wall of the trailers. I pushed/moved them with my waist and feet.
According to Dean, another essential function of an operator in the Empty Case Room is to be physically able to remove garbage, which could weigh up to 38 pounds, from cases, which may be stacked up to 7 feet high, prior to placing the cases in the depalletizing system. Plaintiff disputes that this is an essential function also:
The few cases that had returned product of any weight were 99% of the time located on the bottom rows of the pallet. If garbage was in the cases stacked on the top rows, I could pull out a middle case or two and lowered [sic] the height of the column so that I could remove and dispose of the garbage within restrictions.
Dean determined that plaintiff could not perform the essential functions of an operator in the Empty Case Room with an accommodation, because there was no accommodation that would allow him to do so without: (1) contravening his permanent restrictions; (2) requiring Dean to reassign his duties to another operator; (3) creating a safety hazard; or (4) lowering Dean's productivity standards. According to Dean, even if plaintiff could have performed the essential functions of an operator in the Empty Case Room with an accommodation, *704 which he could not, there have been no openings in the Empty Case Room since plaintiff submitted his WDSR.
On September 5, 2014, in response to plaintiff submitting his WDSR and a grievance related to his return to work, Spadoni, Warren, and Ken Graham, the Plant Manager of Dean Foods' Huntley plant, met with plaintiff and his union representatives. At the outset of the meeting, Spadoni asked plaintiff to sign a HIPAA release so that his medical information could be discussed with his union representatives present. Plaintiff refused. Spadoni adjourned the meeting to provide plaintiff with an opportunity to contact his attorney. After speaking to his attorney during the break, plaintiff insisted on his refusal to sign the HIPAA release. The parties discontinued the meeting.
On October 31, 2014, Spadoni and Graham, on behalf of Dean, organized a second meeting with plaintiff and his union representatives. At the outset of this meeting, Spadoni repeated his request that plaintiff sign the HIPAA release so that his medical information could be discussed with his union representatives present. Plaintiff, acting on his attorney's advice, refused to sign the HIPAA release form. The parties discontinued the meeting.
On January 27, 2015, Spadoni and Graham organized a third meeting with plaintiff and his union representatives. At the outset of this meeting, plaintiff finally agreed to sign the HIPAA release. Spadoni began the meeting by going through each of plaintiff's permanent restrictions. Spadoni explained to plaintiff that his permanent restrictions prevented him from performing the essential functions of an operator in the Empty Case, Uniloy, and Filler Rooms. Plaintiff was ineligible for TTDP because: (1) his restrictions were permanent; and (2) his injury occurred over 6 months prior to his possible enrollment in the program. According to Dean, the only operator positions that became available during the relevant period were in Relief and Vacation Relief, and the Pasteurization, Cooler, and Filler Rooms-positions he could not fill due to his permanent medical restrictions.
Pursuant to the CBA, when an employee's seniority has lapsed due to a leave of absence of at least sixty months, the employee is dismissed. Pursuant to this provision, in February 2016, plaintiff's seniority lapsed and his employment was terminated after he was unable to return for 60 months due to medical issues. At no time prior to February 2016 did plaintiff suggest any specific accommodation other than to be returned to work subject to his medical restrictions. The Union filed a grievance on plaintiff's behalf, claiming violations of the CBA and the ADA, but an arbitrator found no merit in these claims.
During his deposition, plaintiff was asked what activities his injuries keep him from doing. Plaintiff said "the restrictions that my doctor put me under." Plaintiff went on to agree that he could drive a car, do some yard work, and help with dishes and groceries.
At an arbitration hearing, Greg Munks testified that he has worked for Dean for over 30 years including 7 years as a foreman in the Empty Case Room. He testified that the job is less physically demanding now as opposed to when he worked there as more of it is automated. Munks stated that it is very seldom that operators have to stack pallets. He stated that if a truck had a lot of returned product in it, it would first go to the cooler to get unloaded so it can be in a refrigerated area. After reviewing plaintiff's permanent work restrictions, Mr. Munks testified that plaintiff could perform the operator job in the Empty Case, Uniloy, and Filler Rooms within his restrictions.
*705 In an affidavit, James Steele swore that he began his employment with Dean in December 1994 at the Huntley Plant. Since 1999 or 2000, he has worked in the Uniloy Room on the second shift. He knows all job duties and requirements of working in the Uniloy room from first-hand experience performing them over the years and also directly observing co-workers perform them. The Uniloy room is normally staffed with 3 operators and a relief operator. The relief person provides relief in the Uniloy and the Filler and/or Empty Case Rooms. The operators are assigned to run 4 gallon and 1 1/2-gallon Uniloy machines and help each other with tasks from time to time as needed. Steele is aware of plaintiff's permanent restrictions and believes that plaintiff can perform the essential functions of the operator job in the Uniloy room utilizing the various methods and accommodations without violating his medical restrictions, requiring his duties to be reassigned to another operator, creating a safety hazard, or having a noticeable impact on productivity.
In Count I, styled "Disability Discrimination, Including Failure to Accommodate, in Violation of the ADA," plaintiff alleges that between August 7, 2014 and February 2016, Dean could have without undue hardship allowed him to return to work in his former light-duty position, in a comparable position within his medical restrictions, in another position he was qualified to perform, or granted him another reasonable accommodation to allow him to return to work. Plaintiff also alleges that Dean failed to engage in the interactive process to identify potential work adjustments that would have allowed him to return to work in a position consistent with his restrictions. Plaintiff alleges further that Dean terminated his employment because of his disability.
In Count II, styled "Retaliatory Discharge in Violation of the IWCA and Common Law," plaintiff alleges that Dean refused to accommodate him and return him to work, or to engage in the interactive process, because of his IWCA-protected activities. Plaintiff also alleges that when Dean discharged him in February 2016, it was a retaliatory discharge in violation of IWCA and the Illinois common law.
II. DISCUSSION
Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party. Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008). For the purposes of a motion for summary judgment, the court must look at the evidence in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
A. Dean's Motion for Summary Judgment
1. ADA Claim
To defeat summary judgment on an ADA discrimination claim, a plaintiff must point to evidence showing that (1) he is a qualified individual with a disability under the meaning of the ADA; (2) he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) he suffered an adverse employment decision as a result of his disability. Guzman v. Brown County, 884 F.3d 633, 641 (7th Cir. 2018). To support a failure-to-accommodate claim under the ADA, a plaintiff must demonstrate that (1) he is a person with a disability as *706 defined by the ADA; (2) the defendant knew about her disability; and (3) the plaintiff is otherwise qualified to perform the essential functions of the job sought, with or without reasonable accommodation. Winfrey v. City of Chicago, 259 F.3d 610, 614 (7th Cir. 2001). A plaintiff who clears this first hurdle must then show that her employer failed to provide a reasonable accommodation. Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001).
a. Disability Under the ADA
To establish either a discrimination or failure-to-accommodate claim under the ADA, plaintiff must establish that he is disabled within the meaning of the statute. Dean contends that plaintiff was not disabled under the ADA and that he admitted under oath that his permanent medical restrictions did not substantially limit his major life activities. In response, plaintiff maintains that he was and continues to be "disabled" under the ADA as a matter of law and that he did not admit that his medical restrictions did not substantially limit his major life activities. Specifically, plaintiff argues that he has been substantially limited in the major life activity of lifting since October 2009. In particular, plaintiff asserts that, with the exception of times in 2010 when the limits were lowered, since October 2009 he has been restricted from lifting more than 25 pounds from floor to waist and from pushing more than 50 pounds. In fact, plaintiff has filed his own motion for partial summary judgment in which he seeks judgment on this issue. In his memorandum in support of his motion for partial summary judgment-in which he incorporates his response to Dean's motion for summary judgment-plaintiff cites § 12102(2)(A) of the ADA and explains that it was amended in 2008 to specifically include "lifting" as a major life activity. Plaintiff also cites a section of the Code of Federal Regulations providing that "[s]omeone with an impairment resulting in a 20-pound lifting restriction ... is substantially limited in the major life activity of lifting." 29 C.F.R. pt. 1630, app. § 1630.2(j)(1)(viii). In its reply brief, Dean persists in its contention that plaintiff was not disabled as a matter of law because lifting limitations do not qualify as a disability under the ADA.
First of all, plaintiff made no admission that his permanent medical restrictions did not substantially limit his major life activities. During his deposition, plaintiff was asked what activities he felt were restricted by his injuries and he said "the restrictions that my doctor put me under." When asked if there were any others, plaintiff said "no," and then agreed that he could drive a car, do some yard work, help with dishes, and grocery shop. Of course it was the doctor that restricted him from lifting more than 25 pounds from floor to waist and from pushing more than 50 pounds. This medical restriction is the physical impairment that plaintiff claims substantially limits the major life activity of lifting.
Secondly, "[l]ifting is a major life activity." Majors v. Gen. Elec. Co., 714 F.3d 527, 533 (7th Cir. 2013). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The ADA specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A) (emphasis added). Thus, the question for this court is whether the inability to lift more than 25 pounds is a substantial impairment *707 of the major life activity of lifting.
Dean cites to three cases to support its position that plaintiff was not disabled as a matter of law because his lifting limitations do not qualify as a disability under the ADA. The first case, Bumphus v. Unique Personnel Consultants, cites to pre-amendment law applicable at a time when "lifting" was not an enumerated life activity. No. 16-CV-312-SMY-DGW, 2018 WL 4144475, at *3 (S.D. Ill. Aug. 30, 2018). In the second case, the court held that a lifting restriction much greater than the one placed on plaintiff, namely "[t]he inability to lift more than 68 pounds does not qualify someone as disabled or 'regarded as' disabled under the ADA." Chi. Reg'l Council of Carpenters, United Bhd. Carpenters & Joiners of Am. v. Berglund Const. Co., No. 12 C 3604, 2012 WL 3023422, at *2 (N.D. Ill. July 24, 2012). The third case also dealt with a much greater lifting restriction, concluding that "many people are unable to lift the 50-pound and 100-pound boxes as required by the FFH test; Rosas's inability to do so does not render him substantially limited in lifting ability compared to the general population." Chi. Reg'l Council of Carpenters v. Thorne Assocs., Inc., 893 F. Supp. 2d 952, 962 (N.D. Ill. 2012).
"An impairment is a disability ... if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). Comparative assessment between an individual's performance and the performance of "most people in the general population ... usually will not require scientific, medical, or statistical analysis." Id. § 1630.2(j)(1)(iv). At this point in the litigation, the court is not prepared to conclude that most people in the general population are unable to lift 25 pounds from floor to waist. Therefore, the court cannot conclude that plaintiff's lifting restriction does not substantially limit his ability to perform the major life activity of lifting. Consequently, Dean will not be granted summary judgment on plaintiff's ADA claims on this basis.
b. Performance of Essential Functions With or Without Reasonable Accommodation
Dean contends that plaintiff was not a qualified individual with a disability because he could not perform the essential functions of his position as an operator in the Empty Case Room-which includes lifting cases weighing up to 38 pounds, pallets weighing 48 pounds, and garbage weighing up to 38 pounds-with or without a reasonable accommodation. Dean contends further that it could not reasonably accommodate plaintiff's medical restrictions through plaintiff's suggested accommodations of (1) placement on permanent light duty; (2) placement in another position, or (3) an unspecified work adjustment.
In response, plaintiff argues that conflicting evidence creates genuine issues of material fact regarding (1) the essential functions of an operator in the Empty Case Room and of relief operators, and (2) whether he could have satisfactorily performed the essential functions of these jobs with or without accommodation. The first task for the court in deciding plaintiff's failure-to-accommodate ADA claim is to determine what the essential functions were of plaintiff's position as an operator at the Huntley Plant. Evidence relevant to the determination of whether a particular duty is an "essential function" includes:
(i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job *708 performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.
Stern v. St. Anthony's Health Ctr., 788 F.3d 276, 285 (7th Cir. 2015) (quoting 29 C.F.R. § 1630.2(n)(3) ). "[It is] presum[ed] that an employer's understanding of the essential functions of the job is correct, unless the plaintiff offers sufficient evidence to the contrary." Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Circuits, 601 F.3d 674, 679 (7th Cir. 2010) ; see also Miller v. Ill. Dep't of Transp., 643 F.3d 190, 197-98 (7th Cir. 2011). However, courts should not "rubber-stamp an employer's assertions about which functions are essential," because doing so would allow employers to undermine the ADA by creating new essential functions as "post hoc rationalizations for unlawful discrimination." Hawkins v. George F. Cram Co., 397 F. Supp. 2d 1006, 1020-21 (S.D. Ind. 2005). Whether a function is essential is a question of fact. Brown v. Smith, 827 F.3d 609, 613 (7th Cir. 2016).
Plaintiff has presented evidence that would allow a reasonable jury to find that he could perform the essential functions of an operator in the Empty Case Room without accommodation. Plaintiff swore that from October 2009 to February 2011 he was capable of performing the essential functions of an operator in the Empty Case Room within his medical restrictions through various methods and techniques, including reducing the weight of the cases that he has to lift, and that he could do so without help or decreasing productivity. Dean disputes that plaintiff accomplished all the essential duties in the Empty Case Room within his medical restrictions from October 2009 to February 2011, that it was his "regular, pre-injury job," and that his duties "were not 'light' duties." According to Dean, during this time, plaintiff was assigned to temporary transitional duty (light duty) and was not required to perform all duties of the position. However, this dispute only highlights that there are genuine issues of material fact as to the essential functions of the job and whether plaintiff could do them with or without accommodation.[2]
Moreover, Steele has testified that he is aware of plaintiff's permanent restrictions and believes that plaintiff can perform the essential functions of the operator job in the Uniloy Room utilizing various methods and accommodations without violating his medical restrictions, requiring his duties to be reassigned to another operator, creating a safety hazard, or having a noticeable impact on productivity. Further, Greg Munks, a veteran operator for Dean including *709 seven years as a foreman in the Empty Case Room, reviewed plaintiff's permanent restrictions and believed that he could "definitely" do the job.
Dean argues that plaintiff, Steele and Munks cannot offer opinion testimony on these matters because they were not disclosed as experts by plaintiff's counsel and lack the requisite expertise to offer opinions on the ADA. Other than the general rule that all witnesses who are to give expert testimony under Rule 702 must be disclosed under Rule 26(a)(2)(A), Dean offers no authority to support its position that testimony concerning the essential function of a job has to be expert testimony that must be disclosed as such. Logic and case law support the opposite conclusion. For example, two of the factors to be considered in determining the essential functions of a given job are the work experience of past incumbents in the job and the current work experience of incumbents in similar jobs. This type of testimony will typically be provided by past and current incumbents of the job in question, not by ADA experts. Further, in Stern, the Seventh Circuit noted that expert testimony on the essential functions of a job is not necessary unless the job's essential functions are beyond the experience of most jurors. 788 F.3d at 293 n.11. The court cannot conclude that the ability to lift a certain amount of weight is a function beyond any juror's experience or ability to understand.
Dean also challenges as "self-serving" the statements in plaintiff's affidavit indicating that he could perform the essential functions of an operator in the Empty Case Room within his medical restrictions. However, Dean has failed to provide authority for striking this evidence or giving it no weight as Dean urges.[3] This is not surprising because the authority is contrary to Dean's argument. See McKinney v. Office of Sheriff of Whitley Cty., 866 F.3d 803, 814 (7th Cir. 2017) ("[T]he [district] court was wrong to discount McKinney's testimony as 'self-serving, speculative, and conclusory.' Our cases for at least the past fifteen years teach that [s]elf-serving affidavits can indeed be a legitimate method of introducing facts on summary judgment."); United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($ 100120), 730 F.3d 711, 717 (7th Cir. 2013) ("To reject testimony because it is unsubstantiated and self-serving is to weigh the strength of the evidence or make credibility determinations-tasks belonging to the trier of fact.").
Dean argues further that this court cannot consider accommodations proposed by plaintiff for the first time at summary judgment to determine whether plaintiff was a qualified individual under the ADA. According to Dean, the only accommodations properly before the court were identified by plaintiff in his amended complaint: (1) permanent light duty, (2) placement in another position, or (3) an unspecified work adjustment. Dean maintains that each of these accommodations are unreasonable. Dean complains that plaintiff "now suggests a litany of accommodations" that plaintiff never asked *710 Dean to provide. However, what plaintiff is now maintaining is that he could do the essential functions of an operator in the Empty Case Room without any accommodation from Dean through self-accommodation.
For these reasons, the court finds that there are disputed facts as to whether plaintiff can perform the essential functions of the job with or without reasonable accommodation precluding summary judgment on Count I.
2. Retaliatory Discharge
Dean contends that plaintiff's retaliatory discharge claim fails because the terms and conditions of his employment did not change after he filed his IWCA claim, and he was later discharged for the legitimate nondiscriminatory reason that his seniority lapsed under the CBA after he voluntarily left employment and was unable to return to work for 60 months due to medical issues. In response, plaintiff argues that Dean has not moved for summary judgment on his retaliatory refusal to recall claim and therefore cannot have summary judgment on Count II; and there is a genuine issue of material fact as to whether Dean's refusal to recall plaintiff to work and consequent discharge were causally related to his protected IWCA activity.
Under Illinois law, there is "a cause of action for retaliatory discharge where an employee is terminated because of his actual or anticipated exercise of workers' compensation rights." Phillips v. Cont'l Tire The Americas, LLC, 743 F.3d 475, 477 (7th Cir. 2014). The cause of action also lies where an employee is not returned to work because of his actual or anticipated exercise of workers' compensation rights. See 820 ILCS 305/4(h) ("It shall be unlawful for any employer ... to refuse to rehire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act."). To establish this cause of action, plaintiff must prove: "(1) that he was an employee before the injury; (2) that he exercised a right granted by [IWCA]; and (3) that he was discharged [or not returned to work] and that the discharge [or failure to return to work] was causally related to his pursuit of a claim under the [ICWA]." Phillips, 743 F.3d at 477.
Plaintiff argues that Dean has not moved for summary judgment on his claim that Dean failed to return him to work in retaliation for his IWCA activity. Dean agrees that it has not moved for summary judgment on this claim, but maintains that plaintiff should not be able to add this claim at this late stage of the litigation and, in any event, it is entitled to summary judgment on that claim as well as plaintiff's claim based on his discharge. Count II of plaintiff's amended complaint clearly contains a claim based on Dean's retaliatory failure to return him to work as well as retaliatory discharge:
79. As described above, during the period August 7, 2014 to February 2016, Dean Foods, without undue hardship, could have allowed Richard to RTW in his former light/limited duty position, or in a comparable one within his permanent medical restrictions, placed him in another position that he was qualified and able to perform, and/or granted him another reasonable accommodation to allow him to RTW.
80. Dean Food's refused to reasonably accommodate Richard because of his IWCA-protected activities.
81. Also, as described above, Dean Foods failed to engage in an interactive process to identify potential work adjustments that would have allowed Richard to return to work in a position consistent *711 with the limitations related to his disability because of his of his IWCA-protected activities.
ECF No. 6 ¶¶ 79-81 (emphasis added). Moreover, Dean's motion and briefs filed in support address both types of claims because there is little to no distinction in how the claims are analyzed.
Count II boils down to whether there is a genuine issue of material fact as to whether there was a causal relation between plaintiff's IWCA activity and Dean's refusal to return plaintiff to work in August 2014, which resulted in a lapse in plaintiff's seniority under the CBA and, in turn, plaintiff's eventual discharge from employment. Dean contends that plaintiff was not returned to work because he was not able to perform the essential functions of the job with or without reasonable accommodation and was not eligible for TTDP, and that plaintiff's ultimate separation from employment was legitimate and non-discriminatory. However, this court has just held that there is a genuine dispute as to the material fact of whether plaintiff could perform the essential functions of the job with or without reasonable accommodation. This genuine issue of material fact also precludes this court from granting Dean summary judgment on Count II.
3. Punitive Damages
In his prayer for relief as to all counts, plaintiff seeks punitive damages among other relief. The parties dispute whether punitive damages are appropriate in this case. "Punitive damages are available for violations of the Americans with Disabilities Act if the defendant discriminated with malice or with reckless indifference to the federally protected rights of an aggrieved individual." Equal Employ't Opportunity Comm'n v. Flambeau, Inc., 846 F.3d 941, 947 (7th Cir. 2017) (citing 42 U.S.C. § 1981a(b)(1) ). Similarly, punitive damages may be awarded under Illinois law for retaliatory discharge. Kelsay v. Motorola, Inc., 74 Ill. 2d 172, 189, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978).
Dean contends that plaintiff is not entitled to punitive damages because Dean did not act with malice or reckless indifference when it (1) terminated his employment under the terms of the CBA and (2) determined that it could not reasonably accommodate plaintiff's permanent restrictions. Dean's argument, however, is both problematic and incomplete. It is problematic because Dean assumes that it in fact terminated plaintiff because it determined that it could not reasonably accommodate plaintiff. This court has already found that plaintiff has presented contrary evidence that would allow a reasonable jury to find that he could perform the essential functions of an operator in the Empty Case Room without accommodation. Dean does not contend that if the jury found that plaintiff could perform the essential functions of the job that it could not also find malice or reckless indifference. Dean's argument is incomplete because it does not contend that there is no record evidence of its malice or deliberate indifference to plaintiff's rights outside of the two circumstances to which it limits its argument. Therefore, Dean has not convinced the court that it is entitled to summary judgment on this issue.
B. Plaintiff's Motion for Partial Summary Judgment
Plaintiff seeks summary judgment on the first element of his ADA claims, that he is disabled as defined under the ADA. As explained in section II.A.1.a of this order, this court cannot conclude that plaintiff was not disabled as a matter of law. Nor can it come to the opposite conclusion as a matter of law. See *712 Dadian v. Village of Wilmette, 269 F.3d 831, 838 (7th Cir. 2001) (holding that the decision as to whether plaintiffs were disabled under the ADA was a question for the jury). Thus, plaintiff's motion for partial summary judgment is denied in this regard.
Plaintiff also moves for summary judgment on Dean's affirmative defense that his ADA claim is barred under res judicata due to a prior arbitration award. Plaintiff argues that the arbitration between plaintiff's union and Dean does not preclude plaintiff's ADA claim because an arbitration is not a judicial proceeding that can have preclusive effect on a subsequent federal statutory civil rights action. Dean has failed to respond to this argument thereby waiving the issue. See Palmer v. Marion County, 327 F.3d 588, 597 (7th Cir. 2003) (deeming claim abandoned where plaintiff failed to discuss it in brief in opposition to summary judgment). Therefore, the court enters summary judgment for plaintiff on Dean's res judicata affirmative defense.
Next, plaintiff moves for summary judgment in its favor on Dean's undue hardship affirmative defense. In US Airways, Inc. v. Barnett, 535 U.S. 391, 401-02, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002), the Supreme Court set forth an analysis to determine an undue hardship. It is the employer's burden to establish an undue hardship defense by showing that the accommodation would be unreasonable. Id. at 400-02, 122 S.Ct. 1516. The ADA lists the factors to be considered:
In determining whether an accommodation would impose an undue hardship on a covered entity, factors to be considered include--
(i) the nature and cost of the accommodation needed under this chapter;
(ii) the overall financial resources of the facility or facilities involved in the provision of the reasonable accommodation; the number of persons employed at such facility; the effect on expenses and resources, or the impact otherwise of such accommodation upon the operation of the facility;
(iii) the overall financial resources of the covered entity; the overall size of the business of a covered entity with respect to the number of its employees; the number, type, and location of its facilities; and
(iv) the type of operation or operations of the covered entity, including the composition, structure, and functions of the workforce of such entity; the geographic separateness, administrative, or fiscal relationship of the facility or facilities in question to the covered entity.
42 U.S.C § 12111 (10)(B). If the employer makes its showing, an employee can still argue that special circumstances warrant a finding that the accommodation is reasonable in a particular case. Barnett, 535 U.S. at 405, 122 S.Ct. 1516.
In response to this part of plaintiff's motion, Dean cites Warren's testimony that accommodating plaintiff's disability by requiring other operators to perform the tasks that plaintiff was restricted from doing would have slowed down production at the Huntley Plant and affected the efficiency of operations. In reply, plaintiff argues that the evidence of a lack of productivity was not quantified in any meaningful way by Dean.
The court agrees that Dean has not presented sufficient evidence to sustain its undue hardship affirmative defense at summary judgment. Summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005) The *713 non-moving party must affirmatively demonstrate with "specific facts" that a genuine issue exists that require trial. Gabrielle M. v. Park Forest-Chi. Heights, Ill. Sch. Dist. 163, 315 F.3d 817, 822 (7th Cir. 2003) (emphasis omitted). Dean has not identified evidence quantifying the financial burden that would accompany accommodating plaintiff as is necessary to evaluate the factors listed in § 12111 (10)(B). Consequently, the court enters summary judgment for plaintiff on Dean's undue hardship affirmative defense.
Plaintiff contends further that he is entitled to summary judgment on Dean's affirmative defense of failure to mitigate damages. In particular, plaintiff maintains that there is no evidence that he failed to exercise reasonable diligence to mitigate damages or evidence of a reasonable likelihood that he would have found comparable work by exercising reasonable diligence. The court disagrees. There is evidence in the record indicating that plaintiff did not seek employment for nearly a year after he was separated from Dean and the jury must determine whether his subsequent efforts constituted reasonable diligence to mitigate his damages. See Kasper v. Saint Mary of Nazareth Hosp., 135 F.3d 1170, 1176 (7th Cir. 1998) (holding that it was for the jury to decide whether plaintiff's job search constituted reasonable diligence). Therefore, plaintiff's motion for summary judgment on Dean's affirmative defense of failure to mitigate damages is denied.
III. CONCLUSION
For the foregoing reasons, defendant's motion for summary judgment is denied. Plaintiff's motion for partial summary judgment is granted in part and denied in part. The court enters summary judgment for plaintiff on Dean's res judicata and undue hardship affirmative defenses. The motion for partial summary judgment is denied in all other respects.

The facts deemed necessary to the disposition of the motions before the court are taken from the pleadings, the parties' statements of undisputed facts, the parties' responses thereto, the parties' statements of additional facts, and the evidence submitted in support. The facts are undisputed unless otherwise indicated. Plaintiff has filed a motion to deem undisputed certain facts that plaintiff contends Dean has failed to properly dispute. Plaintiff attacks Dean's responses to numerous paragraphs of plaintiff's Local Rule 56.1(a)(3) statement of material facts in support of its motion for partial summary judgment. As noted, the court has stated the facts necessary to the resolution of the pending motions and has indicated when a fact is disputed. It would not be an efficient use of this court's time to determine paragraph by paragraph whether certain facts, often not relevant to this court's resolution of the motions, have been adequately disputed. Accordingly, this motion is denied as moot.

The parties also dispute whether Dean met its obligations to engage in the interactive process when it met with plaintiff and his union representative on three occasions to discuss his medical restrictions and possible accommodations. Dean maintains that its three meetings with plaintiff and his union representative and regular communication with plaintiff preclude a finding that it failed to engage in the interactive process. Dean maintains further that any breakdown in the interactive process was the result of plaintiff's refusal to sign a HIPAA release. In response, plaintiff maintains that Dean made no effort at meaningful communication with plaintiff about accommodating his permanent restrictions under the pretext of an unnecessary HIPAA release. In support of his position that a HIPAA release was unnecessary, plaintiff contends that Dean is not a "covered entity" for purposes of the HIPAA privacy rule under 42 U.S.C. § 1320d-1(a)(3). In its reply, Dean does not contend that it was a "covered entity" but states that it was acting on the advice of counsel in good faith. Suffice it to say that disputed factual and legal issues remain with regard to this issue.

Dean maintains that plaintiff has made statements in his affidavit that contradict his deposition testimony. In particular, Dean points out that plaintiff testified during his deposition that he was on transitional or light duty from October 2009 to February 2011, which is contradicted by his statement in his affidavit that during this time he was able to accomplish all the essential duties of an operator in the Empty Case Room within his medical restrictions. The court does not agree that this is necessarily a contradiction. Plaintiff could have technically been on light duty while learning that he could do all the essential functions of the job through the means he described.